RICHARD D. HAWKINS AND LURA A. HAWKINS,
HIS WIFE, vs. CHARLES N. BOUIC AND ALBERT
M. BOUIC, ASSIGNEES.

*Equity: sales under foreclosure; enforcement of surrender to
purchaser of possession of property sold. Mortgagor and
mortgagee: right of former to have proceeds of sale
applied to payment of debts other than one spe-
cifically secured; adjustment of consequen-
tial equities governed by find-
ings of fact.*

A writ in the nature of a *habere facias possessionem* is the
appropriate remedy in equity to compel the mortgagor in pos-
session to surrender the property sold to the purchaser thereof,
after final ratification of sale under foreclosure proceedings.
                                                    p. 162

Where the mortgagor is indebted to the mortgagee for loans
other than the one specifically secured by the mortgagee, the
mortgagee may, with the assent of the mortgagor, apply a por-
tion of the sum realized from the sale of the property under
foreclosure proceedings in partial liquidation of the unsecured
debts; and if the mortgagor voluntarily assents to such appli-
cation of funds, he can not afterwards be heard to complain of
the attendant reduction in the value of his equity of redemp-
tion.                                               p. 162

H., being the owner of three tracts of land, one of which was
subject to a mortgage to one L. for $2,500, with the joinder of

his wife, L. A. H., mortgaged all of said tracts to one C. to secure a loan of $3,000; thereafter H. executed a second mortgage on the same properties to secure the sum of $1,000, his wife, L. A. H., being named as mortgagee; this mortgage was shortly thereafter assigned by H. and wife to one W., who, during the next two years succeeding said assignment, loaned to H. and L. A. H., his wife, some $2,500 on five different occasions, said sums being secured by separate bills of sale on personal property of the mortgagors; the original mortgage for $3,000 to C. was subsequently acquired by W. Thereafter, one of the tracts subject to the mortgage held by W., as assignee of C., was sold by H. and his wife. W. joined in the deed and released his mortgage lien thereon, the net proceeds from which sale (some $1,500) were paid to W., who credited no part thereof to the $3,000 debt under the mortgage held by him as assignee of C.; thereafter, another tract, subject to the lien of both the original L. and C. mortgages, was sold by H. and wife; of the proceeds some $4,000 was paid in liquidation of the L. mortgage, and $1,254 to W., who credited $1,068 thereof on the debt secured by the C. mortgage held by him as assignee. In addition to this, H. thereafter paid W. $150 in cash which was not credited on the mortgage debt, W. claiming that both said payments—$150 and $1,500—were by him applied, with the knowledge and acquiescence of H. and L. A. H., his wife, to the reduction of their indebtedness to him secured by the bills of sale. Seven years later the last tract was sold under the foreclosure power contained in the C. mortgage held by W. for $3,100 and purchased by W., and the sale finally ratified and confirmed. The auditor's account stated the mortgage debt of W. to be some $3,500, and allowed the net sum realized by the foreclosure proceedings, amounting to $2,912, to W., leaving no surplus for the liquidation of L. A. H.'s second mortgage of $1,000, which had therefore been reassigned by W. to L. A. H. By exceptions and petition, H. and his wife contended: (a) that the mortgagors were charged with more than due interest on the debt; (b) that W. had purchased the property for the benefit of H. and wife, and that when a final account was stated between them, it would be found that nothing was due under the C. mortgage held by W.; (c) that the $1,000 mortgage of

L. A. H. had been assigned to W. as additional security for the C. mortgage, and that had proper credits been allowed by W. on the C. debt, it would have been liquidated, and therefore the $1,000 mortgage would be entitled to a proportionate part of the fund in court; or (*d*) that W., having failed to apply the amounts by him received from M. upon the C. mortgage, H. was entitled to receive out of the proceeds realized by foreclosure a sum equivalent to the total payments so made by him to W.

The lower court overruled each objection so made to the auditor's account, ratified said account, and directed H. and wife to surrender the property to W. On appeal, it was *held*:

(1) That the evidence does not sustain the contentions *a, b* and *d* of L. A. H. and H., her husband; p. 161

(2) That the testimony of H. shows that he knew, at the time of the various sales and payments, the extent of the credits to which he was entitled, and consented to the manner of their application, and that L. A. H., his wife, agreed to all transactions made by her husband; and p. 161

(3) That objection *c* was not well taken, inasmuch as both the C. mortgage for $3,000 and the L. A. H. mortgage for $1,000 covered the same property, and the C. mortgage was executed prior to the H. one, and the latter could not have been assigned as additional security for the payment of the debt secured by the former for the reason that it did not, because it could not, afford such additional security. p. 158

*Decided June 25th, 1913.*

Appeal from the Circuit Court for Montgomery County, in Equity (PETER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Frank Higgins* and *Alexander Kilgour,* for the appellant.

*Albert N. Bouic,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The questions involved in this appeal are entirely questions of fact. The contention of the appellants, Richard D. Hawkins and Lura A. Hawkins, his wife, is that the proceeds of sales of certain property covered by a mortgage given by them, and upon which property Lura A. Hawkins held a subsequent mortgage, and certain other payments received by the assignee of the mortgage should have been applied by him to the mortgage debt, while the appellees contend that the money received from said sales was applied by the assignee of the mortgage to other debts which the appellants owed him in pursuance of an agreement with Richard D. Hawkins and with the knowledge and assent of his wife, and that the other payments made by Richard D. Hawkins were not applied by him, but were applied by the assignee of the mortgage to other claims held by him against said appellants.

The following opinion of the Court below contains a clear statement of the case and a full discussion of the evidence, and we entirely concur in the conclusion reached by the learned judge who prepared it:

"This case is now before the Court upon exceptions separately filed by the mortgagors to the ratification of the report of the auditor distributing the proceeds derived from the sale made under these proceedings, and also upon the petition of the purchaser at said sale for a writ of *habere* and the evidence taken thereunder."

"The record discloses that Richard D. Hawkins, on the twenty-fifth day of April, eighteen hundred and ninety-nine, being the owner of two adjacent parcels of land situate in Frederick county, herein called the Putnam tract, subject to a mortgage owned by Charles Levy, securing the payment of

twenty-five hundred dollars, also of a parcel of land situate in Montgomery county, herein called the Kinder tract, and also of two adjacent parcels of land situate in Montgomery county, herein called the Bennett tract, did together with his wife, by their deed of mortgage of that date convey the same to one Noah E. Cramer to secure the payment of a promissory note bearing even date with the mortgage, for three thousand dollars, drawn by Richard D. Hawkins, as principal, and Lura A. Hawkins, William N. Thompson and Fleet Staley, as sureties, payable to the order of Noah E. Cramer one year after date with interest from date; and thereafter by his deed of mortgage dated the fourth day of May, eighteen hundred and ninety-nine, Richard D. Hawkins conveyed the same lands to his wife, Lura A. Hawkins, to secure the payment of a promissory note of even date with the mortgage for one thousand dollars, drawn by the mortgagor, payable to the order of the mortgagee one year after date with interest from date."

"On the tenth day of May, nineteen hundred, Lura A. and Richard D. Hawkins assigned the last mentioned mortgage to Horace D. Waters. By their bill of sale dated the twenty-ninth day of October, nineteen hundred, Mr. and Mrs. Hawkins, for the recited consideration of seven hundred and ten dollars and fifty-one cents, conveyed certain personal property therein described to Horace D. Waters (Exhibit B. S. 1). The evidence shows this bill of sale was given to secure the payment of a promissory note dated the nineteenth day of October, nineteen hundred, for seven hundred and ten dollars and forty-one cents, drawn by Mr. and Mrs. Hawkins, payable to the order of Mr. Waters, nine months after date with interest from date, which is filed as an exhibit herein. By assignment dated the fifth day of March, nineteen hundred and one, Mr. Waters acquired the Cramer mortgage."

"By their bill of sale, dated the tenth day of June, nineteen hundred and one Mr. and Mrs. Hawkins for the recited consideration of a debt of four hundred and fifty dollars

owing by them to him conveyed certain personal property to Mr. Waters (Exhibit B. S. 11). It appears from the evidence, this bill of sale was given to secure the payment of a promissory note of even date therewith, for four hundred and fifty dollars drawn by Mr. and Mrs. Hawkins, payable to the order of Mr. Waters six months after date. By their bill of sale of the last-mentioned date, Mr. and Mrs. Hawkins, for the recited consideration of an indebtedness of two hundred and fifty dollars owing by them, to Mr. Waters conveyed to him certain personal property therein described (Exhibit B. S. No. 8). It appears from the evidence this bill of sale was given to secure the payment of a promissory note of even date therewith for two hundred and fifty dollars drawn by Mr. and Mrs. Hawkins, payable to the order of Mr. Waters six months after date. By their bill of sale dated the twenty-eighth day of October, nineteen hundred and one, Richard D. Hawkins and his wife for the recited consideration of an indebtedness from them to Mr. Waters amounting to four hundred and ninety dollars conveyed to him certain personal property therein described (Exhibit B. S. No. 9). The evidence shows this bill of sale was given to secure the payment of a note of even date therewith for four hundred and ninety dollars, drawn by Mr. and Mrs. Hawkins, payable to the order of Mr. Waters ten months after date. By their bill of sale dated the eleventh day of November, nineteen hundred and one, Hawkins and wife for the recited consideration of an indebtedness from them to Mr. Waters of four hundred and five dollars conveyed to him certain personal property therein described (Exhibit B. S. No. 5). The evidence shows this bill of sale was given to secure the payment of a note dated the eighteenth day of October, nineteen hundred and one, for four hundred and five dollars and fifty cents, drawn by Richard D. Hawkins, payable to the order of Mr. Waters ten months after date, with interest from date."

"On the twenty-eighth day of July, nineteen hundred and two, the Kinder tract was sold by Mr. Hawkins for twenty-

three hundred and twenty-eight dollars, and seventy-three cents. Mrs. Hawkins was present when the sale was consummated and united with her husband in the deed to the purchaser. Mr. Waters was also present and executed and delivered to the purchaser a deed releasing the land sold from the liens existing thereon by reason of the two mortgages hereinbefore referred to. The purchase money was paid out by Messrs. Talbott and Prettyman who were supervising the sale for the party lending the money to the purchaser. According to a statement prepared by them and handed to Mr. Richard D. Hawkins at the time of the sale, after paying out the purchase price certain expenses, taxes and judgments, about which there is no dispute, there remained fourteen hundred and twenty-nine dollars and seventy-three cents, which it is conceded, should have been fifteen hundred and eight dollars and sixty-six cents, which was received and applied by Mr. Waters in accordance with a statement read from his ledger in reply to the fifth direct interrogatory propounded to him, from which it appears no part thereof was applied to the debt secured by the Cramer mortgage. The exceptants contend that this was error, and that this entire amount should have been applied on that debt. On the twenty-sixth of March, nineteen hundred and three, Mr. Hawkins with the concurrence of his wife and Mr. Waters, sold and conveyed the Putnam tract for four thousand dollars. Of the proceeds of this sale Mr. Hawkins received and retained one hundred dollars, being the amount paid by the purchaser when the contract of sale was made, and out of the remainder, thirty-nine hundred dollars, twenty-five hundred and sixty-two dollars and twenty-six cents was paid to Mr. Levy to settle the first mortgage on the property, fifty-two dollars and seventy cents was applied to the payment of taxes, twenty-five dollars and forty cents was paid to a Mr. Biser to settle a claim he had against Mr. Hawkins, and five dollars was paid to Mr. Cramer for his fee for services rendered in connection with the sale. This

left a balance of twelve hundred and fifty-four dollars and sixty-four cents, which was paid to Mr. Waters, of which he credited as of date of the sale one thousand and sixty-eight dollars and sixty-one cents on the debt secured by the Cramer mortgage, leaving a balance of one hundred and eighty-six dollars and three cents, which the exceptants also claim should have been credited on the last mentioned debt. The exceptants further claim a credit as of the tenth day of May, nineteen hundred and six, of one hundred and fifty dollars on the debt secured by the Cramer mortgage for money it is conceded was paid on that date by Mr. Hawkins to Mr. Waters."

On the tenth day of May, nineteen hundred and ten, the Bennett tract was sold under the power contained in the Cramer mortgage by the assignees thereof for the purpose of foreclosure, at public auction, to Horace D. Waters, for thirty-one hundred dollars, which sale was reported to this Court and by an order thereof passed on the fourteenth day of June, nineteen hundred and ten, finally ratified and confirmed, and on the sixteenth day of July, nineteen hundred and ten, the auditor filed his report distributing the proceeds of sale. In the account stated by him the auditor charged the parties making the sale with thirty-one hundred dollars, being the gross amount thereof, credited them with the costs and expenses incident to the sale, amounting to one hundred and eighty-seven dollars and seventy-five cents, and distributed the balance, amounting to twenty-nine hundred and twelve dollars and twenty-five cents, on account of the mortgage debt, which he found amounted to thirty-five hundred and six dollars and fifty cents on the tenth day of May, nineteen hundred and ten, the day of the sale. In arriving at the amount of the mortgage debt as of the day of sale, two credits were allowed by the auditor thereon, one of one hundred and eighty dollars as of the twelfth day of May, nineteen hundred, the other of one thousand and sixty-eight dollars and sixty-one cents as of the twenty-sixth day of March, nineteen

hundred and three, the latter being money received by Mr. Waters from the sale of the Putnam tract. On the sixth day of July, nineteen hundred and ten, it was ordered that the report of the auditor be ratified unless cause to the contrary be shown on or before the thirtieth day of July, following. On the last mentioned day, Richard D. Hawkins excepted to its ratification "Because the said mortgagor says that he is charged with more interest than is due on the mortgage described therein." On the tenth day of June, nineteen hundred and eleven, Mr. Waters filed his petition in this case, in which he alleged that Mr. and Mrs. Hawkins were in possession of a portion of the land purchased by him and asked that they be required to deliver possession thereof to him. On the twenty-second day of June, nineteen hundred and eleven, the defendants answered this petition, alleging in substance, that Mr. Waters had purchased the property to hold for them until a settlement could be had between him and them of all dealings between them, when he was to reconvey it to them or any person they might name, and that upon a fair settlement of all the dealings had between the petitioner and the respondents it would be found there was nothing owing him on the debt secured by the Cramer mortgage at the time of the sale made thereunder."

"On the twenty-fifth day of May, nineteen hundred and twelve, Mrs. Hawkins filed a petition herein, which, in substance, alleges that she assigned her mortgage to Mr. Waters as collateral security for the payment of the debt secured by the Cramer mortgage, which he had promised her husband to acquire; that Mr. Waters received from the Kinder tract twenty-three hundred and twenty-eight dollars and seventy-three cents and from the sale of the Putnam tract thirteen hundred and fifty-four dollars and seventy-three cents, which he ought to have applied, but did not apply, on account of the debt secured by the Cramer mortgage; that after the sales of the Kinder and Putnam tracts Mr. Waters delivered to her and she accepted from him her mortgage as a reassign-

ment thereof to her; that the entire amount of the debt secured by her mortgage with interest thereon from the date of the mortgage remains unpaid, and she asks that the same be paid from the proceeds of the sale made under these proceedings. On the seventh day of June, nineteen hundred and twelve, Mr. Hawkins filed additional exceptions to the ratification of the auditor's report, in which he claims that he is entitled to a credit of eleven hundred and ninety-four dollars and sixty-one cents as of March fifth, nineteen hundred and three, and of sixteen hundred and five dollars and sixty cents as of July nineteen hundred and two, in addition to the credits allowed on the Cramer mortgage by the auditor. When the exceptions came on to be heard the solicitors for the exceptants were requested to furnish the Court with a specific statement of the credits they claimed in addition to those allowed by the auditor, which they have done in the paper signed by them appended to this opinion."

"All of the parties agree that the assignment of the Hawkins mortgage was not made to secure any existing debt owing by Mr. and Mrs. Hawkins to Mr. Waters and that he paid no money consideration therefor. This being so, the question arises, Why was that assignment made? The assignment is endorsed on the mortgage and it was executed by Mr. and Mrs. Hawkins and delivered by Mr. Hawkins to Mr. Waters. The assignment and affidavit thereto are dated the tenth day of May, nineteen hundred, and it was filed for record the following day. Mrs. Hawkins at no time had any conversation in regard thereto with Mr. Waters. When first called to testify in her direct testimony Mrs. Hawkins said that this assignment was made at the instance of her husband, and she understood it was made as additional security to the mortgage Mr. Waters had on all of their property. In her cross-examination, between questions 43 and 56, she reiterates that she was under the impression the assignment was made as additional security for a mortgage Mr. Waters held on their property, which she thought amounted to

twenty-six hundred dollars, and says that it was not given as additional security to the Cramer mortgage. This testimony was given on the twenty-fourth day of October, nineteen hundred and ten. On the ninth day of August, nineteen hundred and twelve, Mrs. Hawkins was again called to testify in support of her own petition, and she then said the assignment of her mortgage was given as additional security for the Cramer mortgage. Considering all of her testimony bearing upon this subject, the Court is forced to the conclusion that she made this assignment because her husband requested her to do so without any knowledge of the purpose for which it was to be used. On the second day of November, nineteen hundred and ten, in his direct examination Mr. Hawkins was asked 'What did you receive from Mr. Waters for getting your wife to assign that mortgage to him,' and he replied, 'I didn't receive anything at all. I gave it to him to secure him in any possible way for any favor he might extend under the promise that he would take up my mortgage of three thousand dollars, and other judgments that I owed.' Yet, when cross-examined on the twenty-sixth day of February, nineteen hundred and twelve, notwithstanding the above statement, he says he is positive his wife's mortgage was assigned as additional security for the Cramer mortgage and he again testified on the ninth day of August, nineteen hundred and twelve, in support of his wife's exception to the same effect. And when asked, 'Was anything said about it being security for any other indebtedness,' he replied, 'No, sir, that wasn't mentioned. He never has mentioned the mortgage as being security for anything else, not in his life to me.' "

"Mr. Waters in his examination in chief was asked: 'Will you explain about the assignment of the one thousand dollars mortgage to you by Mrs. Richard D. Hawkins?' 'Well, Richard D. Hawkins was dealing with me, having various transactions, and he said to me his wife had a mortgage against him for one thousand dollars, and that he wanted

to turn that over to me as additional security for the various transactions that we were having. I told him at the time I didn't see where that was any additional security. He said that it didn't make any difference, but that he would like me to hold the mortgage for the time being.' Upon this evidence the Court finds that the Hawkins mortgage was assigned to Mr. Waters for the purposes stated by him and by Mr. Hawkins when he was first interrogated in regard thereto, and that it was not made as now contended by Mrs. Hawkins, as additional security for the payment of the Cramer mortgage. In this connection I may add, that as both the Cramer and Hawkins mortgages convey the same property, and the Cramer mortgage was given prior to the Hawkins mortgage, the latter could not have been assigned as additional security for the payment of the debt secured by the former for the obvious reason that it did not, because it could not, afford such additional security."

"I further find from the uncontradicted evidence of Mr. Hawkins, given when he was called to testify in rebuttal, that on the day of the sale of the Kinder Tract, after that sale had been concluded, Mr. Waters handed the Hawkins mortgage with assignment to him endorsed thereon to Mr. Hawkins with the remark, 'That's your wife's mortgage. I release it. She can get her money now.' I also find Mr. Hawkins delivered this mortgage and assignment to his wife the same day, and that under all of the facts there was a good and sufficient equitable reassignment by Mr. Waters to Mrs. Hawkins of her mortgage on that day. The record discloses that at the time of the sale of the Kinder Tract, in addition to the debts secured by the Levy, Cramer and Hawkins mortgages, Mr. Hawkins owed large amounts of money principally to Mr. Waters on account of numerous and varied transactions had between them for payment of a large portion of which Mrs. Hawkins had become security. From the sale of the Kinder Tract, Mr. Waters received, exclusive of the amount paid him to settle certain judgments

controlled by him, one thousand five hundred and eight dollars and sixty-six cents, which was applied by him as shown by the account stated in his ledger, to which reference has hereinbefore been made, which he testifies was examined and approved as correct by Mr. Hawkins, and which testimony I believe is true, notwithstanding Mr. Hawkins' testimony to the contrary. According to this statement there was owing to Mr. Hawkins as of the first day of January, nineteen hundred and three, on matters charged in that account, a balance of seventy-seven dollars and twenty-five cents, which, according to the testimony of Mr. Waters, was included in a judgment confessed by Mr. Hawkins in his favor on the twenty-second day of April, nineteen hundred and three, for three hundred and forty-three dollars and nineteen cents. Upon an examination of this account it will be found that the amount of the notes upon which Mrs. Hawkins as surety paid therein was greater than the amount received by Mr. Waters from the sale of the Kinder Tract, as above stated."

"Mr. Waters testified that the one hundred and eighty-six dollars and three cents received by him from the sale of the Putnam tract was according to his recollection applied to the payment of a bill for fertilizer used on that farm. In his cross-examination, in reply to the fortieth interrogatory, Mr. Hawkins says that one thousand and sixty-eight dollars and sixty-one cents was all that was to be applied to the Cramer loan out of the Putnam sale, and in reply to the forty-third interrogatory, in which he was asked what was the one hundred and eighty-six dollars and three cents for, he said: 'It was open accounts standing between Mr. Waters and I. I know there was some fertilizer in it and some store goods.' By crediting the Cramer note with one hundred and eighty dollars for interest paid before it was purchased by Mr. Waters, and one hundred and sixty-eight dollars and sixty-one cents, as of the twenty-sixth day of March, nineteen hundred and three, being the day of the sale

of the Putnam Tract, it will be found that on the thirtieth
day of January, nineteen hundred and four, it amounted to
two thousand five hundred and seventy-two dollars and sixty-
nine cents. On the last mentioned date Mr. and Mrs. Haw-
kins, together with John T. Hawkins, confessed a judgment
in favor of Mr. Waters for six hundred dollars. It is con-
ceded this judgment was given as additional security for the
payment of the debt secured by the Cramer mortgage, and
the Court has no hesitation in finding that Richard D. Haw-
kins at the time it was given agreed that that debt amounted
to about two thousand six hundred dollars or a little less,
and that he knew it amounted to that much because he knew
he had received and that he was only entitled to have the
two credits allowed thereon by the auditor. Did Mrs. Haw-
kins know and assent to the use made by Mr. Waters of
the monies received by him from the sales of the Kinder
and Putnam Tracts? If her testimony and that of her husband
is accepted as true, she did not. Must it be so accepted?
I do not think so. The sales of the Kinder and Putnam
Tracts were conventional sales, and this being true, there was
nothing to prevent the parties from disposing of the proceeds
as they agreed. Mrs. Hawkins was present and participated
in the making of each of these sales. When they were made
she knew of her husband's financial embarrassments, and
she was surety for the payment of a large amount of his
debts. She not only occupied the most confidential of all
relations, that of wife, to Mr. Hawkins, but she has testified
that she left the matters of the Kinder and Putnam sales
to her husband, and that she let her husband attend to all
of her business for her. In addition to these facts, in nine-
teen hundred and four, she united with her husband and his
father in furnishing additional security to stay the foreclos-
ure of the Cramer mortgage, and six years later when it was
foreclosed she attended the sale, and it was not until two
years after the sale she filed her petition objecting to the
ratification of the report of the auditor. From all of these

circumstances the Court concludes that Mrs. Hawkins knew of and acquiesced in the application made by Mrs. Waters and her husband of the monies derived from the sales of the Kinder and Putnam Tracts, and having during all these years acquiesced therein, she cannot now be heard to say they must be applied on account of the Cramer mortgage, and Mr. Waters thereby be compelled to look to them for the payment of debts barred by limitations and the security for which has long since been consumed in the using. The dispute over the application of the money received by Mr. Waters from the sale of the Kinder Tract has evidently grown out of the following entry made in Mr. Talbott's statement of the distribution of that fund, 'Pd. H. D. Waters on a/c of mtgs. one thousand four hundred and twenty-nine dollars and seventy-three cents.' But when it is considered this statement was made by one who represented no one interested in this litigation, and by him handed to Mr. Hawkins, who knew that money was not to be applied to that purpose, it can be allowed no probative force in disposing of the issues here involved."

"I come next to the application of the one hundred and fifty dollars paid Mr. Waters by Mr. Hawkins on the tenth day of May, nineteen hundred and six. According to the testimony, one hundred and five dollars was paid by Mr. Hawkins' check, upon which is written, 'for interest'. When this payment was made Mr. Hawkins received from Waters a receipt for the amount which does not indicate the purpose for which the payment was made. Mr. Hawkins says it was made on account of interest on the Cramer mortgage, and the words 'for interest' were written on the check when he delivered it to Mr. Waters. On the other hand, Mr. Waters says they were not on the check when he received it, that nothing was said between him and Mr. Hawkins at the time of the payment as to how it was to be applied, and that he applied it on account of a debt secured by a bill of sale given him by Mr. Hawkins on the fourth day of May,

nineteen hundred and four. The exceptants allege this payment was made on account of the Cramer mortgage, and this being so, the burden was upon them to prove it. It is sufficient to say they have not discharged this burden, and the application thereof made by Mr. Waters will be permitted to stand."

"The evidence wholly fails to support allegations of the answer of Mr. and Mrs. Hawkins to the petition of Mr. Waters for a writ of *habere,* and will, therefore, order the writ to issue."

In addition to what has been said by the Court below. it may be well to say that it can make no difference in this case for what purpose the mortgage to Mrs. Hawkins was assigned to Mr. Waters, or whether the assignment was valid or void. If the amounts received by Mr. Waters from the proceeds of sales of the mortgaged property were applied by him to other debts of the mortgagors with their knowledge and consent they have no grounds upon which to complain.

The appellants' exceptions to evidence, so far as they relate to the evidence referred to in the above opinion, should have been overruled, and the decree of the lower Court, ratifying the account of the auditor, granting the writ prayed for in the petition of Horace D. Waters, etc., must be affirmed.

> *Decree affirmed, the costs in this Court to be paid by the appellants.*